John Du Wors, State Bar No. 233913
duwors@newmanlaw.com
NEWMAN DU WORS LLP
1201 Third Avenue, Suite 1600
Seattle, WA 98101
Telephone: (206) 274-2800
Facsimile: (206) 274-2801

Attorneys for Plaintiffs/Counterclaim Defendants

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Davison Design & Development Inc. et al., | No. 11-2970-EDL |
| | No. 11-5107-EMC |
| Plaintiffs/Counter-defendants, | |
| v. | Lead Case No. 11-2970-EDL |
| Cathy Riley, an individual, | **NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Defendant/Counter-plaintiff. | |
| Cathy Riley, an individual, and Kristina Kirby, an individual, | The Honorable Elizabeth D. Laporte |
| | Date: May 8, 2012 |
| Counter-claimants, | Time: 9:00 a.m. |
| v. | Location: Courtroom E, 15th Floor |
| OnDemandResearch.com et al., | |
| Counter-defendants. | |

1
**MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS—CV-11-2970-EDL**

| | |
|---|---|
| 1 | XL Marketing Corp. et al., |
| 2 | Plaintiffs, |
| 3 | v. |
| 4 | Kristina Kirby, an individual, |
| 5 | Defendant. |
| 6 | |

TO: DEFENDANTS AND THEIR ATTORNEYS OF RECORD

NOTICE IS HEREBY GIVEN that on May 8, 2012, at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-titled Court, located at San Francisco Courthouse, Courtroom E - 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, in the courtroom of the Honorable Elizabeth D. Laporte, Counterclaim Defendants Caivis Acquisition Corp. II, Caivis Acquisition Corp. III, Digital Publishing Corp, XL Marketing Corp., Spire Vision LLC, Spire Vision Holdings, Proadvertisers LLC, Prime Advertisers LLC, MediActivate LLC, Serve Clicks LLC, ConnectionCentrals, SilverInteractive, OpportunityCentral, Davison Design & Development Inc., ProAdvertisers, LLC, and Ward Media Inc., (Collectively, "Defendants") will and hereby do move the Court to dismiss the Second Amended Counterclaims of Cathy Riley ("Riley") based on Fed. R. Civ. P. 12(b)(6).

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, any opposition and reply, oral argument, the pleadings in the action, and all other matters as may properly be considered.

Respectfully submitted this 28th day of March, 2012.

**NEWMAN DU WORS LLP**

<u>s/ John Du Wors</u>
John Du Wors
California State Bar No. 233913
Attorneys for Defendants

# MEMORANDUM OF POINTS AND AUTHORITY

## I. INTRODUCTION

Cathy Riley demands hundreds of thousands of dollars in damages for receiving a few emails. She claims that alleged errors in the header information—the "from" and "subject" lines—violate California's Bus. & Prof. Code § 17529.5. Specifically, she asserts that header information identifying the type of business promoted in the email, rather than the name of the business, in the "from" line is deceptive. For example, she claims that an email from the American Association of Retired Persons captioned "BenefitsFor50Plus" was likely to mislead the recipient.

But Riley does not have a claim under Section 17529.5. The Federal CAN-SPAM[1] Act preempts all state regulation of email header information, except for claims based on traditional state law fraud claims. Riley does not, and cannot, plead fraud. Her complaints are picayune—each "from" and "subject" line reasonably describes the sender and the contents of the email. But even if they did not, Riley is not entitled to demand that a jury of twelve citizens spend days listening to testimony about emails she received: she did not rely on any allegedly false information and she did not suffer damages. Accordingly, she cannot show the elements of fraud—her claims are preempted and must be dismissed.

## II. STATEMENT OF ISSUE

Federal law preempts state regulation of email header information except for claims based on traditional fraud principles. Riley relies exclusively on California's Bus. & Prof. Code § 17529.5 in support of her claims that emails she received have improper header information, but does not allege fraud. Are Riley's claims preempted by federal law?

---

[1] Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. §§ 7701 et seq.

### III. PROCEDURAL BACKGROUND

**A. Defendants send emails to consumers that have agreed to receive them.**

Each of the Defendants either operates an Internet-based advertising business, or advertises over the Internet using services provided by those advertising businesses. Complaint, ¶¶ 3-27. Riley claims that she did not consent to receive emails from Defendants. Defendants dispute that claim.

After receiving consent, Defendants send emails on behalf of email advertisers. Each email describes an advertiser's offer in the "from" line and the "subject" line, and allows an Internet user to click on a link in the email that leads to the advertiser's website. Complaint, ¶¶ 29, 33.

**B. Riley asks for tens of thousands of dollars in damages for receiving a handful of emails.**

Riley complains that she received "at least 60" emails in 2011, each of which she claims violates Section 17529.5, and entitle her to $1,000 in statutory damages per email. Complaint, ¶ 1. Riley alleges that some of the "from" lines of these emails fail to adequately describe the sender, but her allegations are speculative. For example, she suggests that a "from" line stating it was from "Black Singles Dating" that links to <BlackSingles.com> is misleading because it might actually have led to other "Black" dating websites. Complaint, ¶ 46. Similarly, she claims that "Benefitsfor50Plus" in an email "from" name is misleading even though the email links to the American Association for Retired Persons (AARP) because it might actually be from <SeniorPeopleMeet.com>, a senior dating website. Complaint, ¶ 34.

Riley also complains of the subject line of emails from Davison Design and Development. She suggests that the subject line "Invent and we will develop it" is materially misleading because (according to Riley) Davison is ineffective at developing inventions and Davison's development services allegedly include some, but not all, of the services Riley associates with the term "development."

Complaint, ¶ 38.

Riley does not allege that she was deceived by any of the emails. Nor does she allege that she relied on them in any way or was harmed in doing so.

## IV. DISCUSSION

**A. Riley's claim must be dismissed because she asserts a claim without a legal basis.**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). And allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Riley neither identifies a cognizable theory nor alleges sufficient facts to support the legal theories she does advance. Instead, she relies on misstatements of law and speculation and her claim should be dismissed.

**B. Opportunistic litigation like Riley's is banned by the Federal CAN-SPAM Act.**

Riley asks this Court to endorse a state cause of action for email mislabeling, and has expressly disclaimed reliance on the federal CAN-SPAM Act. There is a reason for Riley's efforts: Congress recognized that "the siren song of substantial statutory damages would entice opportunistic plaintiffs to join the fray, which would lead to undesirable results", *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1050 (9th Cir. 2009). Accordingly, Congress sought to forestall frivolous litigation like Riley's by mandating that only an Internet Service Provider or government agency—the parties likely to be actually harmed by alleged spam—have standing to bring suit for email header violations under the CAN-SPAM Act. 15 U.S.C. § 7706. Riley received a handful of emails, and opportunistically seeks to make hundreds of thousands of dollars for the few seconds it took her to do so. Stymied

by Congress, she asks this Court to do an end-run around plainly-established preemption principles and find a cause of action where none exists.

**C.     Riley's state law claim is pre-empted by federal law.**

The Ninth Circuit unequivocally holds that CAN-SPAM preempts all state law claims relating to commercial email except those arising from "traditional tort theories such as claims arising from fraud or deception." *Gordon v*, 575 F.3d at 1063. CAN-SPAM recognizes the beneficial aspects to commercial e-mail, including bulk messaging. *Id.* at 1049. Congress wanted to "preserve, if not promote" bulk email messaging and noted that the Internet offered "unique opportunities for the development and growth of frictionless commerce." *Id.* Congress also recognized that Internet marketing could be used for predatory and deceptive practices, and struck a "fine balance" between the competing needs of free commerce and consumer protection in enacting CAN-SPAM. *Id.*

Congress recognized that the "patchwork" of existing State anti-spam regulations made it "extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11). State spam regulation is accordingly expressly preempted:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1). Congress clarified that only State laws that "relate to acts of fraud or computer crime" fall within the "falsity or deception" exception. *Gordon*, 575 F.3d at 1061, citing 15 U.S.C. § 7707(b)(2).

Riley argues that inaccurate labeling of the "from" and "subject" lines of emails allegedly sent by Defendants violates Section 17529.5. But the Ninth

Circuit rejected a virtually identical claim as preempted by CAN-SPAM in *Gordon,* 575 F.3d 1040.

The *Gordon* plaintiff relied on Washington State's prohibition on emails that either "misrepresent[] or obscure[] any information in identifying the point of origin" or "[c]ontain[] false or misleading information in the subject line." *Id.* at 1057. Section 17529.5(a) is virtually identical: it forbids any commercial email "accompanied by falsified, misrepresented, or forged header information" or that "has a subject line that a person knows would be likely to mislead a recipient . . . about a material fact regarding the contents or subject matter of the message". The *Gordon* court held that labeling requirements are preempted and cannot be the subject of state based claims: "technical allegations regarding the header information find no basis in traditional tort theories and therefore fall beyond the ambit of the exception language in the CAN-SPAM Act's express preemption clause[.]" *Gordon*, 575 F.3d at 1064.

Similarly, in *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006), the Fourth Circuit rejected claims like those advanced by Riley. The Oklahoma statute at issue made it unlawful to "misrepresent[] any information in identifying the point of origin or the transmission path of the electronic mail message" or " [c]ontain[] false, malicious, or misleading information[.]" *Id.* at 354. The *Omega* court held that the Oklahoma statute was preempted because it "seems to reach beyond common law fraud or deceit". *Id.* at 353-55. As with the state-law based email claims in *Gordon* and *Omega,* claims under Section 17529.5 are preempted to the extent they extend beyond common law fraud or deceit.

**D.  Riley cannot prove common law fraud or deceit.**

Riley fails to allege facts sufficient to support all of the elements of common law fraud or deception. In California, these are two names for the same cause of action: "The elements of fraud, which give rise to the tort action for deceit, are (1)

a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of University of California*, 45 Cal. 4th 1244, 1255, 91 Cal. Rptr. 3d 532 (2009).

### 1. Riley cannot show any material misrepresentations.

Riley must show a misrepresentation to maintain a fraud claim. *Conroy,* 45 Cal. 4th at 1255. Misrepresentation must be material and not consist of "mere error" or "insignificant inaccuracies." *Gordon*, 575 F.3d at 1061. The only misrepresentations Riley alleges involve her belief that the email header information should have been more specific. She claims, for example, that the "from" line must indicate the full name of the company sending the email, and objects that an email advertising the AARP used the "from" name "Benefits50Plus" rather than "AARP". Complaint, ¶ 34. She argues that "[t]he From Name in an email is supposed to identify who the email is *from*; it is not supposed to be an advertising message." Complaint, ¶ 17. But Riley does not identify any misrepresentation: she complains of a lack of specificity, including objecting to "from" lines including "Kids Bible", linking to <AlmightyBiblePromotions.com>, and "Vehicle Protection" linking to <FiveStarAutoProtection.com>, but does not ever claim that a particular line actually misrepresents the sender. This is not misrepresentation: it is, at best, an objection to incomplete labeling which is preempted by CAN-SPAM.

### 2. Riley was not misled by the allegedly offending emails.

Even if the email header information misrepresented a fact, Riley does not, and cannot, plead that she was misled by any of the emails. Consequently, there was no fraud. It is settled law in California that to state a cause of action for fraud based on a misrepresentation, Riley "must plead that [she] actually relied on the misrepresentation." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1089, 23 Cal. Rptr. 2d 101 (1993).

Rather than claim that she was actually misled, Riley speculates that "a reasonable recipient could believe . . ." that each of the emails in question was from a different entity than described in the "from" line. Complaint, ¶¶ 34-49. But fraud requires more than speculation that some hypothetical person *might* be mislead, and Riley's claims accordingly fail.

### 3. Riley suffered no harm.

"The law disregards trifles." Cal. Civ. Code § 3533. California courts will not award damages to plaintiffs whose harm is inconsequential. Riley's opportunistic pursuit of riches through litigation calls to mind *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 458-59, 237 Cal. Rptr. 584 (1987), in which a class action suit for breach of contract and unfair advertising was properly dismissed as *de minimis* where plaintiffs suffered no loss or damage other than having to open an envelope on the false hope of getting a free watch:

> This is not a case of the rich and powerful trampling on the poor and helpless, but simply one of pique at being tricked into opening a piece of junk mail through the false promise of the gift of a cheap plastic calculator watch . . . .
>
> This lawsuit is an absurd waste of the resources of this court, the superior court, the public interest law firm handling the case and the citizens of California whose taxes fund our judicial system. It is not a use for which our legal system is designed . . . .
>
> As a practical matter, plaintiffs' real complaint is that they were tricked into opening a piece of junk mail, *not* that they were misled into buying anything or expending more than the effort necessary to open an envelope. . . . A $ 15 million lawsuit, filed in a superior court underfunded and already overburdened with serious felony prosecutions and complex civil litigation involving catastrophic injury from asbestos, prescription drugs and intrauterine devices, is a vast overreaction . . .

*Id.* "A vast overreaction" is an excellent description of Riley's demands in this case. After she was not promptly paid in response to demand letters, she named no less than 24 defendants in this lawsuit. She seeks hundreds of thousands of dollars

in damages and attorney's fees for having to hit "delete" in her email program.

This "harm" is simply insufficient under California law. *See Hoang v. Reunion.Com, Inc.*, 2008 U.S. Dist. LEXIS 103659, *10 (N.D. Cal. Dec. 23, 2008). In *Hoang*, the plaintiffs claimed fraud-based harm from the receipt, opening and reading of deceptive spam emails. *Id*. at *13. The *Hoang* court held the state email claim was subject to dismissal because the plaintiff failed to identify any harm caused by the receipt, opening, and reading of the fraudulent emails:

> [P]laintiffs cannot proceed with their claim under § 17529.5(a)(1) . . . in the absence of an allegation that each such plaintiff incurred some type of injury or damage as a result of his having taken action in reliance on defendant's assertedly false use of a third-party domain name in the email.

*Id*. at *11. The *Hoang* court further stated that the plaintiffs "failed to allege that any of the four plaintiffs actually incurred an injury as a result of his or her having" received, opened, and read the allegedly fraudulent emails. *Id*. at *13. Similarly, Riley has failed to provide evidence that she suffered damages from receiving, opening, or reading the alleged spam emails. Unlike the plaintiff in *Harris*, Riley cannot even claim she was tricked into believing she would receive a cheap plastic watch.

**E.    The Court should decline Riley's request that it ignore the Ninth Circuit's *Gordon* decision regarding preemption of state email law.**

Riley's complaint cites heavily to *Balsam v. Trancos*, 2012 Cal. App. Lexis 212 (1st Dist. Feb 24, 2012) and *Hypertouch Inc. v. ValueClick Inc.,* 192 Cal.App.4th 805, (2nd Dist. 2011), in support of her argument that she is entitled to rely on state law to object to email header information. e.g., Complaint, ¶¶ 56, 65, 79. Riley's reliance is misplaced.

In *Balsam*, the California court of appeals held only that emails without "accurate and traceable domain names" in the "from" line, regardless of how fanciful those names might be, violated California's Bus. & Prof. Code § 17529.5

and survived preemption. *Balsam,* 2012 Cal.App.212 at *18; *see also Hypertouch*, 192 Cal.App.4th at 832. Riley misrepresents the extent of that holding: she claims that an email "from" line violates Section 17529.5 if it does not "identify the advertiser/sender." Complaint, ¶ 56. Riley does not allege that the "from" lines are inaccurate or untraceable; she complains only that they lead to business entities she claims are controlled by SpireVision, rather than SpireVision itself.

Further, to the extent *Balsam* and *Hypertouch* hold that California may regulate email header information for more than traditional tort theories of fraud, the California courts are inconsistent with the scope of preemption identified by the Ninth Circuit. The *Balsam* and *Hypertouch* opinions provide that Section 17529.5 contains different elements than common law fraud, but do not reconcile these differences with the Ninth Circuit's determination in *Gordon* that *only* state statutes that codify "traditional tort theories such as claims arising from fraud or deception" survive preemption. *Balsam*, 2012 Cal.App.212 at *34; *Hypertouch*, 192 Cal.App.4th at 820; *Gordon* 575 F.3d at 1063. It is precisely these differences that are pre-empted by CAN-SPAM and Riley's claim is preempted.

**F.     Riley's claims are also insufficient under the plain language of Section 17529.5.**

Even if Riley's claims were not pre-empted, which they are, she does not identify a violation of Section 17529.5's requirements for email header information. Section 17529.5 provides that "[i]t is unlawful for any person or entity to advertise in a commercial e-mail advertisement [that] has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, *about a material fact regarding the contents or subject matter of the message*." (emphasis added). In other words, the subject line cannot induce a recipient to open an email about an entirely different subject, such as a subject line claiming "open this email to receive $1 million dollars" that actually led to an advertisement for soap.

Riley claims that emails with subject lines such as "Invent and we will develop it" are misleading, because she believes the business advertised, Davison Design & Development, is ineffective at helping inventors. Complaint, ¶¶ 22, 40. But Riley's claims go not to whether the subject line misrepresented the "contents or subject matter of the message," but rather to whether the email message itself is truthful. The subject line of each email accurately describes the message's contents: the email is about a company that claims to help develop inventions. Whether and to what extent the company actually does help develop inventions is an entirely separate inquiry, outside of the bounds of Section 17529.5.

Similarly, Riley's claims regarding header information fail. Section 17529.5 only prohibits "falsified, misrepresented, or forged" header information. The emails Riley complains of do not falsify, misrepresent, or forge anything. Instead, Riley claims only that they are not specific enough: they describe the type of business, but not the name of the business, that is advertised.

## V. CONCLUSION

Riley opportunistically seeks money from 24 parties based on the receipt of a few emails. But her claims are preempted by federal law, and do not even satisfy the elements of any state law claim. Riley's attempt to mis-use the court system in the pursuit of riches should be denied, and her counterclaims dismissed.

Respectfully submitted this 28th day of March, 2012.

**NEWMAN DU WORS LLP**

s/ John Du Wors
John Du Wors
California State Bar No. 233913
Attorneys for Plaintiffs